# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREGORY BUSH, | : | Civil No. 3:14-cv-1253 |
| Plaintiff | : | (Judge Mariani) |
| v. | : | |
| LACKAWANNA COUNTY PRISON, et al., | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Gregory Bush ("Bush"), a former inmate confined at the Lackawanna County Prison, in Scranton, Pennsylvania, filed the above-captioned action pursuant to 42 U.S.C. § 1983. (Doc. 1). The matter is proceeding *via* an amended complaint. (Doc. 21). Named as Defendants are Robert McMillan, warden; Leonard Bogart, administrative officer; and Benjamin O'Leary, head of the food service department. (*Id.* at p. 2). By order dated October 15, 2015, Defendant O'Leary was dismissed as a party to this action. (Doc. 31). Consequently, the only remaining Defendants are McMillan and Bogart.

Presently before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 41(b) and Middle District of Pennsylvania Local Rule 83.3.1. (Doc. 50). For the reasons set forth below, the Court will grant the motion to dismiss and this action will be dismissed for failure to prosecute and failure to comply with a Court order.

I. **Background**

In the amended complaint, Bush alleges that Defendants violated his right to practice his Nation of Islam religion while confined at the Lackawanna County Prison. (Doc. 21). Specifically, Bush alleges that his constitutional right of freedom of religion was violated by the failure to have Muslim religious services conducted by a cleric affiliated with the Nation of Islam.[1] (*Id.*).

On September 28, 2016, Bush filed a notice with the Court, stating that he had been released from prison and requested that the Court forward any mail to him in care of his sister, Candice Bush, at 1041 Bushwick Avenue, Apt. 6-D, Brooklyn, NY 11221. (Doc. 45).

On October 20, 2016, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 48). Defense counsel served Bush with the motion by first class mail, at the above-referenced address. The mail was returned, unopened, as undeliverable, and marked as "attempted not known/unknown address/unable to forward/return to sender." (Doc. 50-2).

On November 30, 2016, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 41(b) and Middle District of Pennsylvania Local Rule 83.3.1. (Doc. 50).

---

[1] Bush also alleged that Defendants violated his First Amendment right to practice his religion and right to Equal Protection by serving meatless meals to all inmates during the Christian season of Lent. (Doc. 21). The Court previously dismissed this claim. *See* (Docs. 29, 31).

2

On February 24, 2017, the Court ordered Bush to file briefs in opposition to Defendants' motions to dismiss. (Doc. 52). The order warned Bush that, "[f]ailure to comply with this order may result in the granting of the motion to dismiss or dismissal of this case for failure to prosecute." (*Id.* at ¶ 2) (citing Federal Rule of Civil Procedure 41(b)). Bush failed to reply. Bush has not communicated with the Court since he filed the notice of change of address on September 28, 2016, and has not provided any further updated address.

## II. Discussion

District courts have the inherent power to dismiss an action for failure to prosecute sua sponte. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). The United States Court of Appeals for the Third Circuit has identified six (6) factors a court should consider before dismissing an action for failure to prosecute:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

*Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984) (emphases omitted). Not all of the *Poulis* factors need be satisfied to dismiss a complaint. *See Shahin v. Delaware*, 345 F. App'x 815, 817 (3d Cir. 2009) (citing *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992)).

### A. Analysis of the *Poulis* Factors

*1. The extent of the party's personal responsibility*

In the present matter, Bush is *pro se* and is solely responsible for his actions. *See Colon v. Karnes*, 2012 U.S. Dist. LEXIS 14692, at *7 (M.D. Pa. 2012) ("Plaintiff is proceeding *pro se*, and thus is responsible for his own actions."). At this point, the Court has been waiting nine months for Bush to communicate with the Court, and can only conclude that he is personally responsible for failing to inform the Court of his whereabouts.

*2. The prejudice to the adversary*

Second, prejudice to the adversary generally includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories or the excessive and possibly irremediable burdens or costs imposed on the opposing party." *Adams v. Trustees of N.J. Brewery Emps.' Pension Trust Fund*, 29 F.3d 863, 874 (3d Cir. 1994). Prejudice also includes "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003). Bush's continued failure to communicate with the Court and continued inaction frustrates and delays resolution of this action. This failure to communicate clearly prejudices the Defendants who seek timely resolution of the case. *See Azubuko v. Bell National Organization*, 243 F. App'x 728, 729 (3d Cir. 2007) (stating that plaintiff's failure to file an amended complaint prejudices defendants and compels dismissal).

### 3. A history of dilatoriness

Third, Bush has established a history of dilatoriness through his failure to notify the Court of his whereabouts and failure to comply with Court orders and rules. As is clear from the procedural background of this case, Bush has not communicated with the Court since the filing of a notice of change of address on September 28, 2016. (Doc. 45). On February 24, 2017, the Court ordered Bush to respond to Defendants' motions to dismiss, and warned him that this case was subject to dismissal for failure to prosecute. (Doc. 52). Bush failed to reply and failed to file briefs in response to Defendants' motions. The Court finds that over the past nine months, Bush has delayed this matter to the extent that his conduct constitutes a "continuous stream of dilatory conduct." *Briscoe v. Klem*, 538 F.3d 252, 261 (3d Cir. 2008). A *pro se* plaintiff has the affirmative obligation to keep the Court informed of his address. *See* (Doc. 6, p. 4, Standing Practice Order issued June 30, 2014). Should such address change in the course of this litigation, the plaintiff shall immediately inform the court of such change, in writing. (*Id.*). If the Court is unable to communicate with the plaintiff because he has failed to notify the Court of his address, the plaintiff will be deemed to have abandoned the lawsuit. (*Id.*). Bush failed to comply with the terms set forth in the Standing Practice Order.

### 4. Was the conduct willful or in bad faith?

Regarding the next factor, "[w]illfulness involves intentional or self-serving behavior."

5

*Adams*, 29 F.3d at 874. It appears that at least some of this dilatory behavior was performed willfully and in bad faith, as Bush has offered no explanation for his failure to provide the Court with his current address, and has been less than diligent in pursuing this matter. *Gagliardi v. Courter*, 144 F. App'x 267, 268 (3d Cir. 2005) (holding that the district court did not abuse its discretion by dismissing plaintiff's complaint for failure to prosecute, where plaintiff failed to respond to defendants' motion to dismiss for more than three months and this failure to comply prejudiced defendants).

### 5. *Effectiveness of sanctions other than dismissal*

Fifth, a district court must consider the availability of sanctions alternative to dismissal. *Poulis*, 747 F.2d at 869. Given Bush's indigence, alternative, monetary, sanctions would not be effective. *See Dennis v. Feeney*, 2012 U.S. Dist. LEXIS 7328, at *5 (M.D. Pa. 2012) (finding, "monetary sanctions are unlikely to be efficacious given that Plaintiff is indigent"). Moreover, the Court is incapable of imposing a lesser sanction without knowledge of Bush's whereabouts.

### 6. *Meritoriousness of the claim*

The final *Poulis* factor is meritoriousness of the claim. A claim will be deemed meritorious when the allegations of the complaint, if established at trial, would support recovery. *Poulis*, 747 F.2d at 870. The standard for a Rule 12(b)(6) motion to dismiss is utilized in determining whether a claim is meritorious. *Poulis*, 747 F.2d at 869-70.

Defendants maintain that Muslim religious services were provided for inmates at the Lackawanna County Prison. (Doc. 51, p. 7). However, Bush chose not to attend the services because the cleric was not affiliated with Honorable Minister Farrakhan's Nation of Islam. (*Id.*).

The First Amendment offers protection for a wide variety of expressive activities. *See* U.S. Const. amend I. These rights are lessened, but not extinguished in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct. *See Turner v. Safley*, 482 U.S. 78, 89 (1987). Although prisoners must be afforded "reasonable opportunities" to exercise their religious freedom guaranteed by the First Amendment, *Cruz v. Beto*, 405 U.S. 319, 322 n. 2 (1972), imprisonment necessarily results in restrictions on some constitutional rights, including the First Amendment's right to the free exercise of religion. *O'Lone v. Shabazz*, 482 U.S. 342, 348-49 (1987). It is well-established that only those beliefs which are (1) sincerely held, and (2) religious in nature are entitled to constitutional protection. *Wisconsin v. Yoder*, 406 U.S. 205, 215-19 (1972); *Dehart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000); *Africa v. Pennsylvania*, 662 F.2d 1025, 1029-30 (3d Cir. 1981) (describing three indicia of religion, (1) an attempt to address "fundamental and ultimate questions" involving "deep and imponderable matters"; (2) a comprehensive belief system; and (3) the presence of formal and external signs like clergy and observance of holidays.). Defendants do not appear to dispute that Bush's

sincerely held religious beliefs are entitled to Constitutional protection.

Whether an inmate's free exercise of religion has been impermissibly burdened is governed by the four-part test set forth by the Supreme Court in *Turner*, 482 U.S. 78. Specifically, *Turner* instructs courts to weigh four factors when applying this standard: (1) whether the regulation or practice bears a "valid, rational connection" to a legitimate and neutral governmental objective; (2) whether prisoners have alternative ways of exercising the circumscribed right; (3) whether accommodating the right would have a deleterious impact on other inmates, guards, and the allocation of prison resources generally; and (4) whether alternatives exist that fully accommodate the prisoner's rights at de minimis cost to valid penological interests. *Id.* at 89-91.

The first factor requires consideration of whether the restrictions on the plaintiff's religious rights bear a valid and rational connection to a legitimate and neutral objective. Under this prong, courts accord great deference to the judgment of prison officials, who are charged with the "formidable task" of running a prison. *Sutton v. Rasheed*, 323 F.3d 236, 253 (3d Cir.2003) (quoting *O'Lone*, 482 U.S. at 353). The first factor is "foremost" in the Court's analysis, in that a rational connection is a "threshold requirement." *Id.* (quoting *Wolf v. Ashcroft*, 297 F.3d 305, 310 (3d Cir. 2002)). The "opportunity to worship as a congregation by a substantial number of prisoners may be a basic religious experience and, therefore, a fundamental exercise of religion by a bona fide religious group." *Sharp v.*

*Johnson*, 669 F.3d 144, 160 (3d Cir. 2012) (quoting *Small v. Lehman*, 98 F.3d 762, 768 (3d Cir. 1996), *overruled in part on other grounds by City of Boerne v. Flores*, 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997)). However, not "every religious sect or group within a prison—however few in number—must have identical facilities or personnel." *Cruz*, 405 U.S. at 322 n. 2. And, "[a] special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand." *Id.* Defendants assert that they took affirmative steps to provide Muslim religious services, and the Prison provided a Muslim cleric to conduct Muslim services. (Doc. 49, p. 8). However, they state that inmates have no right to dictate that religious clerics belong to a particular sect. (*Id.*). Defendants have presented legitimate penological interests, and those interests appear to be rationally connected to their policy regarding religious services. *See Sharp*, 669 F.3d at 160 (stating that "we have never indicated, let alone clearly established, that a single prisoner or a non-substantial number of like-minded prisoners are entitled to place on the state the burden of furnishing separate religious services for them"); *Smith*, 295 F. App'x at 481 (holding that the DOC's policy to provide chaplains for only the largest faith groups and to prohibit group worship unless headed by an approved, volunteer leader did not violate Rastafarian inmate's free exercise rights). Thus, Defendants have satisfied their burden at the first step of the *Turner* analysis.

The second factor requires consideration of whether inmates have alternative means of exercising the constitutional right at issue. In the free exercise context, the Court considers whether the inmate has other means of practicing his religion generally, not whether he has other means of engaging in any particular practice. *Sutton*, 323 F.3d at 255 (quoting *DeHart*, 227 F.3d at 55). In addition to providing Muslim religious services for inmates, Defendants assert that Prison staff members assisted Bush in writing to the Nation of Islam in order to obtain literature. (Doc. 49, pp. 6-8). Additionally, prison staff members bought prayer books, copies of the Quran, prayer rugs, and body oil in order to allow prisoners to exercise their religion. (*Id.* at p. 8). Thus, Bush had alternate means of practicing his religion at the Lackawanna County Prison. Therefore, the second *Turner* factor weighs in favor of finding the Defendants' actions reasonable.

The third and fourth *Turner* factors focus on the specific religious practice or expression at issue and the consequences of accommodating the inmate for guards, for other inmates, and for the allocation of prison resources. *Sutton*, 323 F.3d at 257 (quoting *DeHart*, 227 F.3d at 57). Defendants assert that no prisoners have the right to dictate to what Muslim sect the cleric conducting the service must belong. (Doc. 49, pp. 8-9). They explain that if Bush were Catholic, he would not be permitted to dictate whether the priest conducting the Mass should be a Franciscan, a Dominican, a Passionist, or a Jesuit. (*Id.* at p. 9). Additionally, requiring the prison to pay for a particular Muslim cleric would likely

hamper the prison's ability to pay for other services. Thus, the third and fourth *Turner* factors weigh in favor of finding the Defendants' actions reasonable.

Defendants have provided legitimate penological interests for their policy regarding religious leaders. Bush has failed to respond to any of Defendants' arguments, and the *Turner* factors weigh in favor of finding the Defendants' actions reasonable.

### B. Balancing of the *Poulis* Factors

In balancing the *Poulis* factors, no single factor is dispositive, *Ware*, 322 F.3d at 222, and not all of the factors need be satisfied in order to dismiss a complaint. *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992). It is clear that, following a full analysis of the factors, the majority of the six factors weigh heavily in favor of Defendants and dismissal of the action for failure to prosecute.

### III. Conclusion

Bush's last communication with the Court was on September 28, 2016. (Doc. 45). It is clear that Bush has been released from custody. *See* (Doc. 45; https://vinelink.com/#/search). Bush's prolonged failure to notify the Court of his whereabouts has forced the Court to consider whether to dismiss the instant action for failure to prosecute. After consideration of the *Poulis* factors, it is clear that the factors militate in favor of dismissal of Bush's claims.

A separate order shall issue.

11

Dated: June 7, 2017

/s/ Robert D. Mariani
Robert D. Mariani
United States District Judge